**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| *In re B and B Construction, LLC,* | : | Civil Action No. 12-5480 (MAS) |
| Chapter 7 Debtor, | : | |
| | : | Bankruptcy Action. No. 11-40535 |
| BOND SAFEGUARD INS., CO., | : | ON APPEAL FROM THE |
| | : | BANKRUPTCY COURT OF THE |
| Appellant, | : | DISTRICT OF NEW JERSEY |
| v. | : | |
| DANIEL STRAFFI, ESQ., | : | MEMORANDUM OPINION |
| Appellee. | : | |

**SHIPP, District Judge**

**I.     Introduction**

Bond Safeguard Insurance Co. ("Bond Safeguard" or "Appellant") appeals an Order Approving the Trustee's Settlement (the "Settlement Order," ECF No. 1-1) entered on July 17, 2012. The Settlement Order memorialized a hearing before the Bankruptcy Court on April 2, 2012. (Settlement Hearing Trans., ECF No. 3.) The Settlement Order approved a settlement between Daniel E. Straffi (the "Trustee") and the Ocean County Utilities Authority ("OCUA"). After careful consideration, and for the reasons set forth below, the Settlement Order is AFFIRMED in part and MODIFIED so that a statutory trust is immediately imposed upon the Settlement Funds, and the Settlement Order is further REVERSED in part and REMANDED so that the Bankruptcy Court may determine to what extent, if any, Appellant's equitable subrogation rights have accrued.

## II. Jurisdiction and Standard of Review

United States District Courts have jurisdiction to review appeals "from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." 28 U.S.C. § 158(a)(3). The District Court sits "as an appellate tribunal, appl[ying] a clearly erroneous standard to review the bankruptcy court's factual findings and a *de novo* standard to review its conclusions of law." *In re Blatstein*, 260 B.R. 698, 705 (E.D. Pa. 2001) (citing *In re Siciliano*, 13 F.3d 748, 750 (3d Cir. 1994). The Court is required to "break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten,* 958 F.2d 1226, 1229 (3d Cir. 1992).

A factual finding "is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948). Stated differently, "[a] bankruptcy court's 'ultimate determination of fact' will not be set aside unless that determination is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data." *In re Dr. R.C. Samanta Roy Institute of Sci. Tech. Inc.,* 465 F. App'x. 93, 96 (3d Cir. 2011) (internal quotation marks and citation omitted).

If it is alleged that the bankruptcy court abused its discretionary authority, "the district court may only determine . . . [whether] the [lower] court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *Blatstein*, 260 B.R. at 705 (second alteration in original) (citing *In re Top Grade Sausage*, 227 F.3d 123, 125 (3d Cir. 2000); quoting *Int'l Union, UAW v. Mack Trucks, Inc.*, 820 F.2d 91, 95 (3d Cir. 1987)).

The instant matter involves a settlement agreement. As an initial matter, compromises are generally favored and encouraged in bankruptcy proceedings. *In re Martin*, 91 F.3d 389, 393 (3d

Cir. 1996). In order to approve a settlement agreement the Court need only conclude that the compromise is fair, reasonable and in the best interest of the estate. *Id.* The authority to approve settlement rests within the discretion of the Court. *Id.*

### III. Background

Debtor, B and B Construction LLC, contracted to perform work for OCUA. (Appellant Br. 1.) Bond Safeguard executed performance and payment bonds in connection with that contract. (*Id.*) Debtor filed for Chapter 7 relief on or about October 21, 2011, and a trustee was subsequently appointed. (*Id.*)

Bond Safeguard alleges that it was advised by OCUA that $600,000 remains in the OCUA contract, but the lowest bid to complete the OCUA Contract is $1,000,000. (*Id.* at 2.) Bond Safeguard is expected, according to its brief, to cover the difference. (*Id.*)

The settlement challenged herein called for OCUA to reject the contract and in exchange OCUA would pay the Trustee $5,645.27 in retainage and $61,680 for work performed by the Debtor (collectively, the "Settlement Funds"). (*Id.*) Bond Safeguard objected to the proposed settlement. This objection was overruled and following a hearing, the Bankruptcy Court approved the proposed settlement via the aforementioned Settlement Order. (*Id.* at 3.) Bond Safeguard appeals the entry of the Settlement Order. (*Id.*) Bond Safeguard argues that it has "priority in the funds," and the "funds are not property of the estate and should not be paid to the Trustee." (*Id.* at 1.)

### IV. Analysis

Appellant defines the issues before the Court as: (1) whether the Trustee's settlement with OCUA providing for payment of funds from a contract between B & B Construction and OCUA (the "OCUA Contract") to the bankruptcy estate ("Contract Funds") disregarded Bond Safeguard's priority subrogation rights; (2) whether "the Trustee's settlement with . . . OCUA that provides for

payment of the Contract Funds resulting from the OCUA Contract to the bankruptcy estate" is subject to reversal where such Funds "should be paid only to laborers and materialmen of the OCUA Contract or Bond Safeguard as [a] subrogee of the rights of the laborers and materialmen;" and (3) "whether the Bankruptcy Court erred in approving the Trustee's settlement with . . . OCUA that provides for payment of the Contract Funds resulting from the OCUA Contract to the bankruptcy estate instead of directing the Contract Funds be held in trust to be paid only to laborers and materialmen of the OCUA Contract or Bond Safeguard as subrogee of the rights of the laborers and materialmen." (Statement of Issues, ECF No. 1-2, 1-3.)

### A. Funds Subject to Equitable Subrogation are Not Part of the Bankruptcy Estate

The Bankruptcy Court only has the power to apportion property that is part of the bankruptcy estate. *See Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 135-136 (1962) ("The Bankruptcy Act simply does not authorize a trustee to distribute other people's property among a bankrupt's creditors."). *Pearlman*, further directly speaking to the issues on appeal, held that "if the surety at the time of adjudication was, as it claimed, either the outright legal or equitable owner of this fund, or had an equitable lien or prior right to it, this property interest of the surety never became a part of the bankruptcy estate to be administered, liquidated, and distributed . . . ." *Id.* at 136.

Appellant argues that because it has already made payments on indemnification claims and has additional claims pending, the Settlement Funds are not part of the estate and should go to Appellant by way of equitable subrogation. (Appellant Br. 4-5.) Appellee argues that because the Debtor listed the OCUA contract "as an account receivable as property of the estate," the trustee had a duty to attempt to reduce that account receivable to cash and that the Bankruptcy Court properly approved the settlement. (Appellee Opp'n 4, ECF No. 5.)

The Court finds this case to be controlled, at least regarding the monies allegedly already paid by Appellant, by *Pearlman*. There, the contractor was unable to complete contracted work for the government and the surety had subsequently paid over $350,000 to discharge the contractor's debts to laborers and materialmen. *Pearlman*, 371 U.S. at 134. The government had been holding approximately $87,000 in withheld contract funds but turned it over to the debtor's estate. *Id.* The surety subsequently disputed the turnover of the funds to the estate. *Id.* The Court held that, having paid the contractor's laborers and materialmen, the surety had acquired subrogation rights which entitled it to all of the funds against the contractor's trustee in bankruptcy. *Id.* at 141-42. The contractor had no right to the monies as they should have been paid directly to the surety. *See id.* "[T]here are few doctrines better established than that a surety who pays the debt of another is entitled to all of the rights of the person he paid to enforce his right to be reimbursed." *Id.* at 136-7. This rule is widely applied and is "generally known as the right of subrogation." *Id.* at 137.

Here, Bond Safeguard has allegedly already paid out one claim and has more claims pending in excess of the Settlement Funds. (Appellant Br. 1-2.) Per the Supreme Court's holding in *Pearlman*, Appellant's equitable subrogation right would entitle it to reimbursement on the claims it has already paid. *See Pearlman*, 371 U.S. at 141-142 ("[T]he surety, having paid the laborers and materialmen, is entitled to the benefit of all these rights to the extent necessary to reimburse it. Consequently, since the surety in this case has paid out more than the amount of the existing fund, it has a right to all of it."). Here, because Bond Safeguard has allegedly made a payment on a claim in the amount of $6,826.67, equitable subrogation entitles it to reimbursement for this amount. This matter, however, requires remand. As noted by Appellee, the "subrogation rights of Bond Safeguard are contested by the Trustee." (Appellee Opp'n 4.) As such, this matter is REMANDED in order for the Bankruptcy Court to conduct a hearing regarding whether, per *Pearlman*, Appellant's equitable subrogation rights have accrued through the alleged payment of $6,826.67. If those rights have

properly accrued, that amount of money is to be forwarded to Appellant from the Trustee forthwith.[1]

### B. Remaining Funds Should Be Placed into Statutory Trust

Appellant argues in the alternative that the Settlement Funds should be held in trust by the estate for Bond Safeguard's use. (Appellant Br. 4.) The Court agrees and finds that according to binding Third Circuit precedent and the New Jersey Trust Fund Act, the Settlement Funds must be held in trust by the Trustee so that Appellant may seek reimbursement on future claims. *See Universal Bonding Ins. Co. v. Gittens and Sprinkle Enters., Inc.*, 960 F.2d 366 (3d Cir. 1992) (interpreting and applying N.J. Stat. Ann. § 2A:44-148).

In *Universal Bonding*, the Third Circuit held that when a surety is indemnifying a bankrupt's debts, all contract funds paid to the estate are to be held in trust until the surety is fully reimbursed. *Id.* at 376. This is so because the New Jersey Trust Fund Act states that "[a]ll money paid by the State of New Jersey or by any agency commission or department thereof, or by any county, municipality . . . shall constitute a trust fund in the hands of such person . . . until all claims for labor, materials and other charges incurred in connection with the performance of such contract shall have been fully paid." *Id.* at 370 (quoting from N.J. Stat. Ann. § 2A:44-148) (Modified). As such, once the debtor (or trustee) "has received the monies from the various agencies, [it] must hold those monies subject to the statutory trust imposed by the New Jersey Trust Fund Act." *Id.* at 371.

The Bankruptcy Court noted that *Universal Bonding* does not require the imposition of a statutory trust "until after the funds have been paid to the debtor or the debtor estate." (Settlement Hearing Trans. 3.) That reading of *Universal Bonding* is correct. However, in this case, the Settlement Order should have indicated that *upon payment* of the Settlement Funds to the Trustee,

---

[1] This assumes the Settlement Funds have already been forwarded to the Trustee. If that is not the case, OCUA should withhold these funds from Trustee and forward said funds to Bond Safeguard instead.

those funds were automatically subject to the statutory trust created by the New Jersey Trust Fund Act. There was no need, as was held by the Bankruptcy Court, that Appellant be required to move for the imposition of the trust. Here, the trust outlined in § 2A:44-148 is created by operation of law. Accordingly, The New Jersey Trust Fund Act requires the Settlement Funds to be placed in trust for the payment of workmen and materialmen. Bond Safeguard, as surety, is responsible for payment to laborers and materialmen and has claims pending in excess of the entire contract funds. Once Bond Safeguard pays those claims, it is entitled to reimbursement from the trust.

For the reasons stated above, the Settlement Order is AFFIRMED in part and MODIFIED so that a statutory trust is immediately imposed upon the Settlement Funds, and the Settlement Order is further REVERSED in part and REMANDED so that the Bankruptcy Court may determine to what extent, if any, Appellant's equitable subrogation rights have accrued. To the extent those rights have accrued, Appellant is entitled to payment from the Settlement Funds.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: May 31, 2013